IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | |
|---|---|
| **SHARON DENISE GARDNER,** * | |
| * | |
| **Plaintiff,** * | |
| * | **Civil No. TMD 14-100** |
| v. * | |
| * | |
| * | |
| **CAROLYN W. COLVIN,** * | |
| **Acting Commissioner of Social Security,** * | |
| * | |
| **Defendant.** * | |
| ************ | |

**MEMORANDUM OPINION GRANTING PLAINTIFF'S**
**ALTERNATIVE MOTION FOR REMAND**

Sharon Denise Gardner ("Plaintiff") seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c)(3) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying her applications for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. Before the Court are Plaintiff's "Motion for Judgment on the Pleadings" (docketed as a Motion for Summary Judgment) or Alternative Motion for Remand (ECF No. 10) and Defendant's Motion for Summary Judgment (ECF No. 12).[1]  Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that she is not disabled. No hearing is necessary. L.R. 105.6. For the reasons that follow, Plaintiff's Alternative Motion for Remand (ECF No. 10) is **GRANTED**.

---

[1] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002). For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable." *Id.*

I

**Background**

Plaintiff was born in 1969, has a seventh-grade education, and previously worked as a sales clerk and security guard. R. at 55, 83, 217-18. On September 27, 2010, Plaintiff protectively applied for DIB and SSI, alleging disability beginning on June 15, 2010, due to Lyme disease, bipolar disorder, schizophrenia, joint pain, and high blood pressure. R. at 166, 170. The Commissioner denied Plaintiff's applications initially and again on reconsideration, so Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). R. at 96-116. On August 7, 2012, ALJ Anne Sharrard held a hearing at which Plaintiff and a vocational expert ("VE") testified. R. at 48-95. On September 24, 2012, the ALJ issued a decision finding Plaintiff not disabled from the alleged onset date of disability of June 15, 2010, through the date of the decision. R. at 17-47. Plaintiff sought review of this decision by the Appeals Council, which denied Plaintiff's request for review on November 18, 2013. R. at 1-6, 15-16. The ALJ's decision thus became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481; *see also Sims v. Apfel*, 530 U.S. 103, 106-07, 120 S. Ct. 2080, 2083 (2000).

On January 14, 2014, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision. Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment. The case subsequently was reassigned to the undersigned. The parties have briefed the issues, and the matter is now fully submitted.

II

**Summary of Evidence**

A.      **State Agency Consultants**

On March 16, 2011, a state agency consultant, D. Walcutt, Ph.D., evaluated on a psychiatric review technique form ("PRTF") Plaintiff's mental impairments under paragraph B of Listings 12.04 and 12.09 relating to affective disorders and substance addiction disorders.  R. at 294-307.  Dr. Walcutt opined that Plaintiff's schizoaffective disorder and alcohol dependence in remission caused her to experience (1) mild restriction in activities of daily living; (2) mild difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) one or two episodes of decompensation of extended duration.  R. at 297, 302, 304.  Dr. Walcutt did not find evidence to establish the presence of the criteria under paragraph C of these listed impairments.  R. at 305.  Dr. Walcutt thus assessed Plaintiff's mental residual functional capacity ("RFC") (R. at 308-11) and opined that she was moderately limited in her ability to (1) maintain attention and concentration for extended periods; (2) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (3) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and to (4) respond appropriately to changes in the work setting.  Plaintiff otherwise was not significantly limited.  R. at 308-09.  Dr. Walcutt's RFC assessment thus provided:

> [Activities of Daily Living]:  able to care for self, takes care of kids, can prepare simple meals, do [household chores], drive, shop, gets along [with] others.
>
> [Mental Status Evaluation]:  [Plaintiff] is able to understand and follow simple instructions independently.  Combined psychiatric conditions result in

> mild to moderate limitations in [activities of daily living], concentration, persistence, pace and work-related social activities.
>
> [A mental RFC] assessment is made as these conditions do not meet or equal a listed impairment. Ratings show mild to moderate limitations in areas dealing with continuity of performance and social interactions.
>
> Residual capacity finds that [Plaintiff] functions in a generally independent fashion and can meet various personal needs from a mental standpoint. [Plaintiff] is capable of completing daily living functions within the constraints of mental and cognitive status. This individual manages within a basic routine. A/C fluctuates at times due to the effects of the conditions. [Plaintiff] appears to have the ability to interact and relate with others socially. [Plaintiff] can adequately negotiate in the general community. [Plaintiff] retains the capacity to perform work-related tasks from a mental health perspective.

R. at 310.

On August 25, 2011, another state agency consultant, James Binder, M.D., also evaluated on a PRTF Plaintiff's mental impairments under paragraph B of Listings 12.04 and 12.09. R. at 326-39. Dr. Binder opined that Plaintiff's impairments caused her to experience (1) mild restriction in activities of daily living; (2) moderate difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) one or two episodes of decompensation of extended duration. R. at 336. Dr. Binder also did not find evidence to establish the presence of the criteria under paragraph C of these listed impairments (R. at 337), so he also assessed Plaintiff's mental RFC (R. at 340-43) and opined that she was moderately limited in her ability to (1) understand, remember, and carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (4) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (5) interact appropriately with the general public; (6) get along with co-workers or peers

without distracting them or exhibiting behavioral extremes; and to (7) respond appropriately to changes in the work setting. Plaintiff otherwise was not significantly limited. R. at 340-41. Dr. Binder in his RFC assessment stated that Plaintiff "likely would have the above limitations but be capable of learning and performing basic work-like tasks." R. at 342.

**B.    Plaintiff's Testimony**

The ALJ noted in her decision Plaintiff's allegations:

> [Plaintiff] indicated she lies down for a total of four to five hours on bad days, which happens three days per week. She cannot lie down on days she has therapy, which lasts thirty to forty minutes and it takes her five minutes to get there. This shows that when she has a task, she can do it without lying down. There is no medical evidence with complaints of her lying down so much. [Plaintiff] finished the seventh grade. She can read and write a simple sentence. There are words in newspaper articles she does not understand. This was taken into consideration when I had the [VE] consider her education. She is also limited to simple, routine, and repetitive tasks.

R. at 27; *see* R. at 81-85.

> [Plaintiff] has described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. In her function report, she indicated that she lived in a house with her children. She helped her children get ready for school. While they were at school she took her medicine, cleaned, washed, and prepared dinner for them. She took care of her children with no indication of help from others, including washing their clothes and cooking for them, but had some trouble focusing. She woke up two to three times per night. Sometimes her joints ached and she had pain in her knees and leg. [Plaintiff] had no problems with personal care. She prepared meals, mostly simple. She cleaned and did laundry but her son mowed the lawn. Her children helped a lot. She went outside often but did not like being around people and preferred to be by herself. She could drive and go out alone. She went shopping for thirty minutes to an hour. She had no problems handling money/bills. She watched television but slept when she took her medications. [Plaintiff] did not mention headaches or any assistive device.

R. at 39; *see* R. at 177-84, 273-82.

C.    **VE Testimony**

The ALJ asked the VE a series of hypothetical questions at the hearing:

Please assume an individual of the same age, education, which is the completion of seventh grade, and work experience as [Plaintiff], who has the following [RFC]. This individual would be limited to light work but would need a sit/stand option at will, as long as this person were not off task more than 15 percent of the day. This person would be limited to simple, routine, and repetitive tasks and would need to be employed in a low stress job, which is defined as requiring only occasional decision making and occasional changes in the work setting, and this individual had occasional interaction with coworkers and the general public.

R. at 87.[2] The VE testified that this hypothetical person would not be capable of performing Plaintiff's past work, but could perform light, unskilled work as a small-parts assembler, labeler, or cleaner/polisher. R. at 87-88. There would be no jobs that this person could sustain if that person missed work three days per month for any reason, however. R. at 88-89. There also would be no jobs if this person were off task for more than 15% of the workday for any reason. R. at 89. Upon examination by Plaintiff's attorney, the VE testified that a moderate limitation in the ability to maintain attention and concentration for extended periods would not preclude the performance of these three jobs. R. at 90-91.

### III

### Summary of ALJ's Decision

On September 24, 2012, the ALJ found that Plaintiff (1) had not engaged in substantial gainful activity since the alleged onset date of disability of June 15, 2010; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations; but (3) did not have an impairment or a

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b). "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." *Id.*

combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) was unable to perform her past relevant work; but (5) could perform other work in the national economy, such as a small-parts assembler, labeler, or cleaner/polisher. R. at 22-41. The ALJ thus found that she was not disabled from June 15, 2010, through the date of the decision. R. at 41.

> In so finding, the ALJ found that Plaintiff had the RFC
>
> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except [Plaintiff] requires a sit/stand option at will as long as she is not off task more than 15%. She is limited to simple, routine, and repetitive tasks in a low stress job, which is defined as requiring only occasional decision making and occasional changes in the work setting. She is limited to occasional interaction with co-workers and the general public.

R. at 25. Regarding Plaintiff's credibility, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [her] statements concerning the intensity, persistence, and limiting effects of these symptoms are not fully credible to the extent they are inconsistent with the objective medical evidence." R. at 32.

## IV

### Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the

region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-380 (2003). "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further." *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant has the burden of production and proof at steps one through four. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[3]

---

[3] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). RFC is a measurement of the most a claimant can do despite his or her limitations. *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age,

education, and work experience. *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## V

## Substantial Evidence Standard

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir.

1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

## VI

### Discussion

Among Plaintiff's contentions is her assertion that the ALJ erroneously assessed her subjective complaints. Pl.'s Mem. Supp. Mot. J. Pleadings 24-27, ECF No. 10-1. The ALJ found that Plaintiff "described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." R. at 39. The ALJ also found that Plaintiff's testimony about her lying down three days per week for four to five hours on "bad" days (R. at 81-82) was not credible because "[t]here is no medical evidence with complaints of her lying down so much" (R. at 27). The ALJ also found:

> The medical record contains no objective medical findings to substantiate the significant symptoms alleged by [Plaintiff], especially her need to lie down for four to five hours a few days a week. Subjective complaints alone are insufficient. Motor and sensory exams were normal. She had normal gait and strength with no neurological deficits. The results of [Plaintiff's] physical examinations are consistent with the above [RFC]. There is no diagnostic testing in the record such as x-rays, MRIs, or computed tomography ("CT") scans. The scant, infrequent and non-descript medical evidence of record simply does not support the severity of limitation alleged by [Plaintiff] . . . .

R. at 34 (citations omitted).

Although the ALJ correctly pointed out that, "whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by

objective medical evidence, [the ALJ] must make a finding on the credibility of the statements based on a consideration of the entire case record" (R. at 26), "an ALJ may not disregard a claimant's subjective complaints solely because they are not corroborated by objective medical evidence." *Conklin v. Barnhart*, 206 F. App'x 633, 635 (8th Cir. 2006) (per curiam). In other words, "the ALJ cannot reject a claimant's testimony about limitations on her daily activities solely by stating that such testimony is unsupported by the medical evidence." *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004); *see Felisky v. Bowen*, 35 F.3d 1027, 1037 (6th Cir. 1994) ("[N]o doctor of record has suggested that [Plaintiff] needs to lie down for the length of time she alleges. Standing alone, however, this factor is not sufficient to discount [Plaintiff's] credibility entirely.").

The ALJ also discounted Plaintiff's testimony regarding her need to lie down four to five hours on "bad days" three days per week because her ability to attend therapy "shows that when she has a task, she can do it without lying down." R. at 27. The Court does not find that this fact or her ability to take care of her children, prepare simple meals, wash laundry, drive, and shop impugns her credibility about her need to lie down weekly. *See Trego v. Astrue*, 350 F. App'x 158, 161 (9th Cir. 2009) ("Merely pointing out that [the claimant] was able to engage [in] some activity does not undermine [the claimant's] testimony that he lies down two hours each day for relief from back pain, and that he cannot sit or stand for more than fifteen minutes."); *Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) (Posner, J.) ("We have cautioned the Social Security Administration against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home."); *Gibson-Jones v. Chater*, 111 F.3d 133, No. 96-2626, 1997 WL 187399, at *4 (7th Cir. Apr. 14, 1997) ("We believe it is plausible for [the claimant] to experience the symptoms she described and need to lie down, while still being

able to attend classes and minimally care for her children with the assistance of relatives."). Because the ALJ's RFC assessment did not include Plaintiff's need to lie down three days per week for four to five hours on "bad" days, the Commissioner did not carry the burden of establishing that there are jobs that Plaintiff can perform. Remand thus is warranted, and the Court need not address Plaintiff's remaining arguments. *See Riden-Franklin v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-10-2298, 2013 WL 150012, at *2 (D. Md. Jan. 11, 2013).

In passing, the Court notes that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" *Mascio v. Colvin*, No. 13-2088, 2015 WL 1219530, at *5 (4th Cir. Mar. 18, 2015) (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)). "[T]he ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* In *Mascio*, the ALJ had found at step three that the claimant had moderate difficulties in maintaining concentration, persistence, or pace as a side effect of pain medication. *Id.* at *4. The court in *Mascio* held that the ALJ had presented an insufficient hypothetical question to the VE because it omitted the claimant's mental limitations. *Id.* at *4-5. Despite the omission, the VE identified unskilled, light jobs that the hypothetical person could perform. *Id.* at *4. The court there remanded the case for the ALJ to explain why the claimant's moderate limitation in concentration, persistence, or pace at step three did not translate into a limitation in the claimant's RFC. *Id.* at *5.

The Eleventh Circuit in *Winschel*, cited in *Mascio*, noted that "other circuits have held that hypothetical questions adequately account for a claimant's limitations in concentration, persistence, and pace when the questions otherwise implicitly account for these limitations."

*Winschel*, 631 F.3d at 1180-81 (citing, *inter alia*, *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 288 (6th Cir. 2009) (concluding that the ALJ's reference to a moderate limitation in maintaining "attention and concentration" sufficiently represented the claimant's limitations in concentration, persistence, and pace)). The ALJ in *Winschel* neither found that the claimant's ability to work was unaffected by his moderate limitation in maintaining concentration, persistence, or pace nor implicitly accounted for the limitation in the hypothetical. *Id.* at 1181. The court thus remanded the case for the ALJ to include explicitly the limitation in his hypothetical question to the VE. *Id.*

Here, the ALJ did not account for Plaintiff's moderate difficulties in maintaining concentration, persistence, or pace in her RFC assessment or in her hypothetical questions to the VE, but only limited Plaintiff to "simple, routine, and repetitive tasks" (R. at 25). The VE's testimony on examination by Plaintiff's counsel that a moderate limitation in the ability to maintain attention and concentration for extended periods would not preclude work in the national economy sufficiently represented the impact of Plaintiff's moderate limitation in maintaining concentration, persistence, or pace on her RFC, however. *See Winschel*, 631 F.3d at 1180-81. The ALJ's error thus was harmless.

## VII

## Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 12) is **DENIED**. Plaintiff's "Motion for Judgment on the Pleadings" docketed as a Motion for Summary Judgment (ECF No. 10) is **DENIED**. Plaintiff's Alternative Motion for Remand (ECF No. 10) is **GRANTED**. A separate order shall issue.

Date: March 31, 2015  /s/
Thomas M. DiGirolamo
United States Magistrate Judge